SOUTHWESTERN GAS & ELECTRIC CO. v. CITY OF SHREVEPORT.*

(Circuit Court of Appeals, Fifth Circuit.  December 10, 1919.)

No. 3406.

1. ESTOPPEL ⊕62(8)—CITY NOT ESTOPPED BY FAILURE TO TAKE ACTION ON NOTICE OF INCREASE OF GAS RATES.

A city held not estopped from maintaining a suit to enjoin the charging of increased rates by a gas company by the fact that it took no action on notice of the intended increase, but waited until the increased rates had been put in force.

2. GAS ⊕14(2)—RATES; COMPANY OPERATING UNDER TWO FRANCHISES CAN CHARGE ONLY LOWEST MAXIMUM RATES.

A gas company, operating under two franchises from a city, one of which it acquired by assignment, held bound to charge no more than the lowest maximum rates provided in either franchise.

Appeal from the District Court of the United States for the Western District of Louisiana; George W. Jack, Judge.

Suit in equity by the City of Shreveport against the Southwestern Gas & Electric Company. Decree for complainant, and defendant appeals. Affirmed.

For opinion below, see 258 Fed. 59.

J. D. Wilkinson and Wilkinson, Lewis & Wilkinson, all of Shreveport, La., for appellant.

Benjamin F. Roberts, J. M. Foster, Frank J. Looney, and W. A. Wilkinson, all of Shreveport, La., for appellee.

Before WALKER, Circuit Judge, and FOSTER and GRUBB, District Judges.

GRUBB, District Judge. This is an appeal from a decree in favor of the appellee, the effect of which is to enjoin the appellant from putting into effect rates for natural gas in excess of a schedule set out in the decree.

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 251 U. S. —, 40 Sup. Ct. 394, 64 L. Ed. —.

The appellant claims the right to increase its rates beyond those set out in the decree, by reason of the claimed happening of a contingency, which was provided for in the amended franchise of the Citizens' Oil & Pipe Line Company, of June 18, 1907, under which the appellant was operating. The effect of this contingency was that the rates therein provided—

"should remain in force and effect as long as what is now known as the Caddo gas field shall furnish gas in sufficient quantities with natural pressure to force such gas from the gas wells through the pipe line of the company to the city of Shreveport, but, should the supply of gas or the natural pressure diminish, so as to make it necessary to use artificial force or power either to pump the gas from the well or to force it through the pipe line of the company to the city of Shreveport, this amendment shall cease, and the rates herein fixed shall become inoperative and void, and the rates now authorized to be charged by said company, as fixed in said franchise, shall revive and become executory as if this amendment had never been passed, and in such event the said company shall be empowered and authorized to charge such rates as now fixed by its said franchise."

Whether the contingency upon which the revivor of the old rates dependent had happened was the disputed question in the case. Its solution depends upon the construction of the words of the amended franchise, "what is now known as the Caddo gas field." If the Pine Island field was included in the Caddo gas field, as known on June 18, 1907, then the contingency had not arisen, for the District Court found, and properly found, from the evidence, that the Pine Island field was capable of furnishing gas in sufficient volume and under natural pressure to supply the city of Shreveport. The District Judge also found that the Pine Island field was included in what was known as the Caddo gas field on June 18, 1907, and we are satisfied with the conclusion reached by him and the reasons expressed in his opinion for reaching that conclusion.

It seems clear to us that both the Pine Island field and the Annanias field were considered, at the time the amended franchise was granted by the city of Shreveport, as parts of the Caddo field. They were both known as gas-producing fields at that time, and are mentioned as such in defining the term Caddo gas field, as used in the Atkins franchise, granted by the city of Shreveport on the same day. The record convinces us, not only that they were known as gas-producing fields, but as mere subdivisions of the Caddo gas field, in June, 1907, and that they were intended by all parties to be included in that term as used in the amended franchise.

[1] The District Judge correctly held that the city of Shreveport was not estopped by its failure to take affirmative action against the appellant, when first notified by it that it would cease to operate under the amended franchise, and would revert to the original franchise. The notice was accompanied by a statement that the appellant would not then raise rates. The city was not called upon to take, and could not well have taken, affirmative legal action, until injury to it or its inhabitants resulted from the declaration. As soon as the appellant put the increased rates in force, the city moved. It was not called upon to act earlier, and no estoppel arises from its not having done so.

[2] The District Judge enjoined the appellant from putting into

effect rates for domestic consumption higher than those named in the Atkins franchise, and for manufacturing and public buildings service higher than those provided for in the amended franchise of the Citizens' Company of June 18, 1907. This was upon the theory that the appellant was operating under both franchises, and that the Atkins franchise provided that, in the event of its transfer to another gas franchise corporation, no higher rates should be charged by the transferee than the lower of those prescribed in the two franchises. The lease agreement between the predecessor of the appellant and the Louisiana Gas Company, the then owner of the Atkins franchise, also prohibited the appellant from charging for gas a rate in excess of the rate authorized by the Atkins franchise. We think the District Judge was correct in his finding of fact that the appellant was operating under both the franchises, and in his conclusion of law therefrom that the appellant was bound thereby to adopt the lower maximum rate, contained in either of the two franchises, and that the lower rate for domestic service (that provided for by the Atkins franchise) and the lower rates for service to public buildings and manufacturing plants (that provided by the amended franchise of June 18, 1907, of the Citizens' Company) were proper maximum rates, which the appellant had no right to exceed, and which it was properly enjoined from increasing. We have stated only ultimate conclusions, and adopt the convincing opinion of the District Judge, for the reasons and authorities supporting them.

Affirmed.